# Tillis, *et al. v.* Folmar.

*Bill by Surety to Compel Principal to Pay Debt in Exoneration of the Suretyship.*

[DECIDED JAN. 6, 1906, 39 So. REP. 913.]

1. *Partnership; Sale of Interest; Liability Inter sese.*—Where partners sell their interest in the firm to the remaining partner and a stranger, and the purchasers agree, as a part of the con-

[Tillis, *et. al.* v. Folmar.]

sideration, to pay the partnership debts, *inter sese*, the purchaser becomes the principal debtor as to such debts and the sellers the surety, so that, the debts having become due and remaining unpaid, the sellers may maintain a bill, as such sureties, to compel the purchasers to pay the debts.

2. *Frauds: Statutes of; Partnership Lands.*—Partnership lands are regarded as personalty in equity and for partnership purposes, as regards the statute of frauds.

3. *Same: Part Performance.*—A contract of sale of several parcels of land is not within the statute of frauds, where any one of the parcels has been taken into possession by the purchaser, and a part of the purchase money paid, as the taking possession of one of the parcels is equivalent to taking possession of them all.

4. *Partnership; Sale; Action against Purchasers; Necessary Parties.*—F. sold his interest and that of W. in a partnership business; W. ratified the action of F. and looks to F. for his share of the proceeds; *Held*, W. is not a necessary party to a bill to compel the purchasers to pay the debts of the firm according to contract.

APPEAL from Montgomery City Court.
Heard before Hon. A. D. SAYRE.

Bill by W. B. Folmar v. Richard Tillis, et al to compel them as principal debtors to discharge the debts for which Folmar is surety. The allegations of the bill and the facts in the case are sufficiently set forth in the opinion of the court.

LOMAX, CRUM & WEIL and MULKEY & CARMICHAEL and HORACE STRINGFELLOW, for Appellants.—The contract right of the parties must be enforced by legal remedies, unless the inadequacy of such remedies is shown. —*Brown, Admr. r. Burnum*, 99 Ala. 114. Jurisdiction of the chancery court cannot be invoked upon the theory of enforcing a lien for the payment of the purchase money.—*Porter v. Ullman*, 105 Ala. 628; *Reese v. Bradford*, 13 Ala. 847; *Mayer v. Clarke*, 40 Ala. 270; *Coffin v. McCullough*, 30 Ala. 107; *Hart v. Clarke*, 54 Ala. 493; *Brown v. Burnum, supra;* 1 Lindlay on Partnership, 336, 575.

A decree for specific performance could not be enforced, the demand being contractual, appellants could

12

not be in contempt for a refusal to perform.—*Ex parte John Hardy*, 68 Ala. 303. The promise of Tillis and Byrd was that they would pay the debts as they accrued, and their failure to do so gave complainant an immediate right of action, not only for the debts of the firm paid by him, but for those unpaid, and the measure of damages would be the entire amount of debts paid by him, and those remaining unpaid.—*Hogan's Executors v. Calvert*, 21 Ala. 194; *Peacey v. Peacey*, 27 Ala. 683; *Brown v. Burnum, supra;* 2 Sutherland on Damages.

The right to exonerate is a branch of the concurrent jurisdiction of courts of equity, and as such depends upon the inadequacy of the remedy at law.—1 Pom. Eq. Juris. Sec. 140; *Thomas v. St. Paul's M. E. Church*, 86 Ala. 138; *Martin v. Ellerbe's Admr.*, 70 Ala. 326; *Hodgson v. Shaw*, 3 Myle and Keene, 183; Spence Eq. Juris. p. 66, note A.

The defendant cannot be deprived of his right of trial by jury by such proceedings as this.—*Youngblood v. Youngblood*, 54 Ala. 486; *Brown v. Brown*, 68 Ala. 114; *Smith v. Cockrell*, 66 Ala. 64; *Moulton v. Reed*, 54 Ala. 320; *Kennon v. Wright*, 70 Ala. 434.

Each suit against Folmar by his creditors would be separate and distinct from the other suits and would in no wise depend upon the same facts and it is admitted that Folmar is primarily liable to the various creditors of the partnership and that he has no defense to their demands either at law or in equity.—*Turner v. City of Mobile*, 135 Ala. 73, and authorities cited.

Walden was a necessary party to the bill.—*Perkins, et al. v. Buerfield*, 77 Ala. 403; *Elliott v. Sibley*, 101 Ala. 344; 15 Am. & Eng. Ency. P. and P. pp. 613-614.

The ratification by Walden is not shown by the allegations of the bill.—*Flewellen v. Crane*, 58 Ala. 626; *Lipscomb v. McClellan*, 77 Ala. 151; *Scholze v. Steiner*, 100 Ala. 152. The transaction as alleged in the bill was void on account of the statute of frauds.—*Tillis v. Treadwell*, 117 Ala. 445; *Raub v. Smith*, 61 Mich. 543; *Heflin v. Milton*, 69 Ala. 354.

J. M. CHILTON and FOSTER, SAMFORD & CARROLL, for Appellee.—The bill contains equity. Wherever it ap-

pears that as between two persons a primary duty rests
upon the one to pay the creditor to the exoneration of
the other, then the person who is thus entitled to be
exonerated and indemnified may proceed in equity to
compel the payment, or if he has paid the debt, to com-
pel the principal debtor to reimburse him.    As to the
general doctrine, see the following authorities.—Brandt
on Sureties & Guar't. Vol. 1, § 223; *Chamberlain v. Blue,*
6 Blanch. (Ind.) 491; *King v. Baldwin,* 2 Johns. 554;
*Hays v. Ward,* 4 Johns. Chanc. 123; *Wright v. Simpson,*
6. Veas. 734; *Bishop v. Day,* 13 Vt. 81; *Gitlem v. Es-
selman,* 5 Snead, 86; *Marsh v. Pike,* 1 Sanford, 210;
*Stevenson v. Tavernors,* 9 Gratt. 398; *Richards v. Osce-
ola Bank,* 79 La. 707; *Meadow v. Meadow,* 88 Ky. 217-
221; *Delancy v. Tipton,* 3 Hayw. (Tenn.), 14; *West v.
Chastain,* 12 Fla. 215; *L. Thompson v. Taylor, Ex'tr.,* 72
N. Y. 32; Pom. Eq. Juris. § 1417.

Or. he may file his bill to compel the creditor to sue
the person who, as to the surety or covenantee is the
principal debtor, and to exhaust his remedies against
him.   But before he can compel the creditor to incur the
risk and expense of suit, he must   indemnify   him.—
Story's Eq. Juris, § 327.

It is believed to be a fact that in not one of the cases
where the bill was filed by the covenantee against the
indemnitor was indemnity required.   Here, however,
full indemnity was offered in the bill.—*Thompson v.
Taylor,* 72 N. Y. 32.   Our Supreme Court is committed
to the theory of the bill.—*Thomas v. St. Paul,* 86 Ala.
138.

While a court of equity will not assume original jur-
isdiction to decree damages for breach of contract, it
will decree such damages where it has obtained juris-
diction for other purposes, or where it is incidental, or
the right to it is derived correlatively from some other
right ascertained to exist in behalf of the complainant.
—*Hale v. Virginia Etc. Mining Co.*

"A second rule is, if the remedy of specific perform-
ance is possible at the commencement of a suit by the
vendee, and while the action is pending the vendor ren-
ders this impracticable by conveying the subject mat-

ter to a bona fide purchaser for value, the court will not compel the plaintiff to bring a second action at law, but having acquired jurisdiction will do full justice by decreeing a recovery of damages." Citing *Morss v. Elmendorf*, 11 Paige, 277; *Woodcock, v. Bennett*, 1. Cow. 711; *Milkman v. Ordway*, 106 Mass, 232, 253. See also, *Eastman v. Read*, 101 Ala. 320.

The separate pleas of Tillis and Byrd were bad in matter of form.—Daniels Chancery Pleading and Practice (4th Ed.), p. 603; *Whitebread v. Brockhurst*, 1 Bro. C. C. 404-418; *Saltus v. Tobias*, 7 John. Ch. 214.

It is not denied in the plea but that the contract was signed by Tillis and Byrd, and they are the parties who are sought to be charged therewith. That is sufficient to meet the statute of frauds.—Section 2151 of the Code, 1896; *Oliver v. Insurance Co.*, 82 Ala. 417; *Sagerfelt v. McKee*, 100 Ala. 430. If it were necessary that Walden should sign the contract, then the defect appeared upon the face of the bill and should have been taken by demurrer.—*Cozine v. Graham*, 2 Paige 178. And the defense of the statute of frauds can be raised by demurrer.—*Adams v. Phillips*, 70 Ala. 373; *Bailey v. Irwin*, 72 Ala. 505.

Tillis and Byrd will not be allowed to retain the fruits of the contract as to its larger part and yet be permitted to disaffirm it, because they did not receive a portion of that which was contracted to be sold them.— *Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Nelson v. Shelby*, 96 Ala. 524; *Brewer v. Logan*, 19 Ala. 481; *Randolph v. Tatem*, 36 Conn. 48; *Bain v. McDonald*, 111 Ala. 272; 3 Pom. Eq. Ju. p. 310. The plea of the statute of frauds is not applicable. The lands when partnership assets are treated as personal property.—*Causler v. Wharton*, 62 Ala. 358; *Powers v. Robinson*, 90 Ala. 225; *Rovelsky v. Brown*, 92 Ala. 522; *Marsh v. Davis*, 33 Kan. 326; *Modderwell v. Mullison*, 21 Pa. St. 257; *Black v. Black*, 15 Ga. 445; Brown on Statute of Frauds, 5th Ed. Sec. 259.

HARALSON, J.—1. It must be admitted that where one partner sells his interest in the firm to another part-

ner, and the same thing is true when a stranger buys out the interest of one of the partners, such purchase, unless it is otherwise provided by the contract of sale, operates such a change in the position of the seller, that he no longer has any claim based on the partnership relation, which would justify an accounting between the partners; and the compensation agreed to be paid must be enforced at law, equity having no jurisdiction to enforce the agreement.—*Brown v. Burnum*, 99 Ala. 114, 12 South. 606.

By the terms of the contract of sale, Tillis, who was a stranger to the partnership, together with Byrd, who was a member of the firm, bought out the interest of complainant, Folmar, and J. C. Walden, another one of the firm. The purchase involved the entire stock of goods, wares and merchandise and office fixtures of said firm, located at different points, and all notes, mortgages, books, accounts and choses in action of said firm at the places specified; also all the real estate belonging to said firm, the intent being as stated, to convey to the purchasers, the entire interest of said firm in and to the partnership property, real, personal and mixed, of every character. The purchase price was $25,000.00; $5,000.00 in cash, which was paid, and two notes of $10,000.00 each of the Henderson Boyd Lumber Company, payable respectively, on the 1st of October, 1902 and 1903, which notes were delivered, the purchasers agreeing also, as a part consideration of the sale, to pay "all the debts, notes and accounts and liabilities of the firm of Folmar, Walden & Byrd, as shown by the books of the firm, together with any accounts that may be due the local merchants for monthly bills."

By such a contract, while the old firm was primarily liable to its creditors, yet, as between the sellers and purchasers, Folmar & Walden and Tillis & Byrd, the former became the guarantors of said debts to the creditors, and their sureties for the payment of the same. As between Folmar & Walden and Tillis & Byrd, the latter were primarily liable to the creditors.—*Mason v. Hall*, 30 Ala. 599. This agreement to pay these debts by Tillis & Byrd was not a covenant for indemnity, merely,

but bound them, Tillis & Byrd, as purchasers, to discharge Folmar & Walden from all liability for the debts. This meant that they would pay them as they accrued and exonerate complainant from paying the same.—*Peacey's Creditors v. Peacey's Adm'r.*, 27 Ala. 683. The bill avers that the debts were all past due, and the failure of defendant to pay, the promise to pay being an affirmative one, gave, it is true, the complainant an immediate right of action on the contract, for the debts he had already paid, and also for all such as he was liable for, but this did not operate to deprive him of his right to file his bill to compel the purchasers to pay the debts and exonerate him from the payment of the same. The prayer of the bill is for a specific performance of the covenant, and for damages for its violation.

As to the right of a surety to file his bill to compel his principal to pay the debt in exoneration of the surety, Mr. Brandt observes: "After the debt for which the surety or guarantor is liable has become due, he may, without paying the debt, and without being called upon by the creditor, file a bill in equity to compel the principal to pay the debt, it being unreasonable that a surety or guarantor should always have a cloud hanging over him even though not molested for the debt. The principle is universally recognized, and has been applied to a great variety of circumstances."—Brandt on S. & G. (3d Ed.) § 245; Baylies on S. & G. p. 301.

In 1 Story's Eq. Juris. § 327, it is said, "Sureties, also, are entitled to come into a court of equity, after a debt has become due, to compel the debtor to exonerate them from their liability, by paying the debt."

In the case of *Thomas v. St. Paul's M. E. Church*, 86 Ala. 141, 5 South. 509, this court, recognizing this doctrine employs this language: "No principle in equity is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying or being called on to pay it, may file a bill in equity to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby." The demurrer so far as it questioned the equity of the bill on

this ground was properly overruled. See also the case of *West v. Chasten,* 12 Fla. 315, where many decisions are collated.

2. The respondents pleaded the statute of frauds,— that the agreement in said bill alleged and sought to be enforced was ineffective, in that a part of the property agreed to be purchased by respondents, and for which an entire and indivisible consideration was agreed to be paid, consisted of considerable real estate situated in various places in Geneva county; that said agreement was not in writing, nor was any note or memorandum thereof in writing signed by respondents or by any one thereunto authorized, etc.

The bill alleges, in substance, that while Walden was not a party himself to said contract of sale, except as complainant represented his interest and undertook to dispose of the same, the complainant has placed the respondents in the full possession, ownership and enjoyment of the property and choses in action sold them, and said Walden has affirmed and ratified his said action and is satisfied to look to complainant for his share of the proceeds of the sale of said property; that a portion of the property purchased was real estate, and that an entire and indivisible consideration was to be paid for it, and the real estate was situated in different places in Coffee county; that said agreement was not in writing, signed by complainant; that Walden never executed any written agreement to convey, and that Folmar had no authority in writing in the premises from Walden; that a part of the consideration was then and there paid and respondents put in possession of a part of the land, but not in possession of the entire lands. The bill alleges, as stated, that the purchasers were put in possession of the entire lands.

The language of the prayer of complainant's bill is, after requesting a reference to ascertain and report the sum due said several creditors by the firm of Folmar, Walden & Byrd, which the defendants in the contract bound themselves to pay, that the court would "render a decree, requiring the said Tillis & Byrd to specifically perform their said contract by paying the amounts due

each of said creditors respectively, and upon their failure to do so, judgment be entered against the said Richard Tillis and Robert E. Byrd for said amount, and that they be also compelled to refund and repay to your orator the debts already paid by him, for which they are liable under said contract." There was no prayer that the legal title to the lands be divested out of Folmar & Walden and be invested in Tillis & Byrd. Indeed, Walden was not a party to the bill.

"Partnership lands in equity and for partnership purposes are to be treated as personalty (4 Mayfields, Dig. p. 397, § 301). Real estate acquired with partnership funds, or on partnership credit, and for partnership purposes, in a court of equity is esteemed partnership property, subject to the payment of partnership debts, in priority of the separate debts of the several partners, and it is not material whether the legal title resides in the partnership or in the several partners as tenants in common, or in the name of one partner only."—Ib., p. 398, § 321.

It is said in Browne on the State of Frauds (5th Ed.) § 259; that "where land is owned by a partnership, each partner, of course, is entitled to his proper share of it. And here must be remarked an important exception (for so it seems we are forced to regard it) to the operation of the statute as it affects interests in land. Where two men are found jointly occupying a piece of land, incurring equal expenditures upon it, and enjoying equal profit from it, the relation which from such facts would be presumed to be existing between them is that of joint tenancy, and, as incident to that joint tenancy, upon the death of either the whole would go to the other by right of survivorship. * * * But when the parties are really partners, and the land has been brought into and actually held and used by the partnership for partnership purposes, the courts have dealt with it as partnership property, although the ownership has not been apparently in all the members of the firm; or, if in all, not apparently as partners, but under some other title. * * * It seems that the earlier authorities to the effect that real estate used for partnership

[Tillis, *et. al.* v. Folmar.]

purposes maintains its character of realty, and goes to the heirs of the partners respectively, have been overruled, and that all property whether real or personal, involved in a partnership concern, is now, upon the dissolution of the partnership distributable as personalty, and generally is to be, for ordinary purposes, regarded as stock in trade," to which the statute of frauds is not applicable.

The contract being entire, and the purchaser having gone into possession of a part of the property, there was such part performance, if that were important, as satisfied the statute of frauds. The effect of the act of taking possession of a part is as applicable to entering into the whole as if the whole had been actually entered upon.—*Smith v. Underdunck*, 1 Sandf. Cr. 579, 581.

"Possession of a tract of land must generally be, from the nature of the case, a possession of a part only as representing the whole. So long, therefore, as the contract under which possession is claimed to have been taken or delivered is an entire contract, though the land consists of several parcels, it would seem more reasonable to hold that possession of one of such parcels was equivalent to possession of the whole," etc.—Browne on Statute of Frauds (5th Ed.) § 475. The exceptions to the plea of the statute were properly sustained.

Under the facts alleged, Walden was not an indispensable party defendant.

Let the decree be affirmed.

TYSON, ANDERSON, and DENSON, JJ., concur.